COMMONWEALTH *vs.* ARTHUR R. KEIGNEY & another[1]
(and two companion cases).

Essex.    May 12, 1975. — June 16, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Disqualification of judge.   *Judge.*

A trial judge who, after taking guilty pleas from two defendants
charged with armed robbery of a bank and prior to sentencing, in-
formed counsel for the defendants that he had been a member of
the advisory board of the board of directors of the bank named in
the robbery indictments until his appointment to the bench four
years earlier, that he was a stockholder in the bank until the previ-
ous year, and that at the time of the pleas he was an accommodation
maker of a note held by the bank, was not required to disqualify
himself from hearing or accepting the pleas where there was no sug-
gestion that the pleas were other than voluntary and intelligent or
that the judge was in fact biased against either defendant because
of his relationship with the bank, where the judge had no direct
pecuniary interest in the disposition of the case, and where he of-
fered to disqualify himself from sentencing the defendants if re-
quested to do so. [350-351]

INDICTMENTS found and returned in the Superior Court
on September 20, 1971.

The cases were heard by *Linscott,* J., and motions for a
new trial were heard by him.

*Harold R. Washington* for the defendants.

*Philip D. Moran,* Special Assistant District Attorney, for
the Commonwealth.

GRANT, J.    On September 20, 1971, the defendants Keig-
ney and Mulcahy (defendants) were indicted jointly with
one O'Rourke for armed robbery while masked, for larceny
of a motor vehicle from one Jarvis, and for unlawfully
carrying a revolver in a motor vehicle. All three crimes were

---

[1] Lawrence T. Mulcahy.

alleged to have been committed in Danvers on May 13, 1971, and the robbery indictment identified a particular bank as having been robbed. A judge of the Superior Court allowed the defendants to plead guilty to all three indictments following a hearing held on June 26, 1972. Sentencing was deferred.

O'Rourke did not plead guilty to any of the indictments, and he was brought to trial on the following day before the same judge who had accepted the defendants' pleas. At that time, in the course of a lobby conference, the judge advised counsel for O'Rourke and the assistant district attorney that he had been a member of the advisory board of the board of directors of the bank named in the robbery indictment (bank) until the time of his appointment to the Superior Court in early 1968; that he had continued to be a stockholder in the bank until 1971, when he had sold his stock; and that he was the accommodation maker, for a friend, of a $1,500 note held by the bank.[2] The judge thereupon offered to disqualify himself from presiding over the further proceedings against O'Rourke if so requested.[3]

The judge also stated on the same occasion that he had not been concerned by his "relationship" to the bank in the course of accepting the defendants' pleas on the previous day, as he intended to allow the defendants to be sentenced by one of two other judges of the Superior Court then sitting in Essex County if the defendants should so request. The judge then directed counsel for O'Rourke to report all the foregoing to then counsel for the defendants.[4] Counsel for O'Rourke left the conference and returned with a report that he had followed the judge's instructions and that counsel for the defendants saw no reason why the

---

[2] We have no information as to the date or terms of the note, or as to its condition at any time.

[3] We infer that no such request was made, because the dockets disclose that the judge continued to preside over so much of the proceedings as pertained to O'Rourke.

[4] Both defendants were then represented by the same counsel, one different from their present counsel.

judge should disqualify himself from passing sentence on them.[5] The judge sentenced both defendants on the following day, June 28, 1972, apparently in the absence of any request that he disqualify himself from performing that function.[6]

In April of 1973 both defendants filed motions to vacate their pleas and for a "new trial." All four motions were heard by the judge who had accepted the pleas and sentenced the defendants, apparently without any request by the defendants that the judge disqualify himself from hearing and deciding the motions. Contrast *Commonwealth* v. *Leventhal*, 364 Mass. 718, 721-723 (1974). The case is now here on the defendants' exceptions to the denial of all their motions.

Both motions for a "new trial" assert that the relief thereby requested should be granted "in the interest of justice." Any such generalized contention must, however, be considered in the light of the record and the arguments advanced in the defendants' brief. There is no suggestion or contention that the pleas were other than voluntary and intelligent (see *Huot* v. *Commonwealth*, 363 Mass. 91, 99-102 [1973], and cases cited; *Commonwealth* v. *Foster*, 368 Mass. 100 [1975]), except in the sense that the defendants were not yet aware of the judge's past and then present relationships with the bank. There is no suggestion or argument that the judge was in fact biased or prejudiced against either defendant by reason of any such relationship. Contrast *Thomajanian* v. *Odabshian*, 272 Mass. 19, 21-22,

---

[5] The defendants do not dispute that their then counsel was advised in accordance with the judge's directions, or that he replied in the manner stated. Their complaint is that they were not advised of the subject matter of the judge's disclosures until after their pleas had been accepted.

[6] There is no indication in the record of any request that the judge disqualify himself from passing sentence. The defendants' brief contains a lengthy narrative of the sentencing proceedings which is not supported by anything found in the record. If we were to consider that narrative, we would have to conclude that the defendants' then counsel was present throughout the sentencing proceedings but would be unable to find any objection to the judge's continuing to act on the indictments.

Commonwealth *v.* Keigney.

23-24 (1930); *King* v. *Grace*, 293 Mass. 244, 245-247 (1936); *Beauregard* v. *Dailey*, 294 Mass. 315, 320, 321, 322, 324-325 (1936); *Commonwealth* v. *Leventhal*, 364 Mass. 718, 724-726 (1974). Nor is there any real contention that in the circumstances the impartiality of the judge was reasonably open to question. See *Commonwealth* v. *Leventhal*, 364 Mass. 718, 725 (1974). A careful reading of the defendants' brief discloses only one argument articulated with any degree of clarity, and that is that the judge should have disqualified himself from hearing or accepting the pleas because he had a "past pecuniary interest in the case" by reason of his relationships to the bank.[7]

No such argument will stand scrutiny on the facts of this case. It was the settled law of this Commonwealth from 1846 until January 1, 1973, which was the effective date of S.J.C. Rule 3:25, 359 Mass. 841,[8] that the "pecuniary or proprietary interest" which required the disqualification of a judge in a particular case was "a relation by which, as a debtor or creditor, an heir or legatee, or otherwise, he . . . [would] gain or lose something by the result of the proceedings, in contradistinction to an interest of feeling, or sympathy, or bias, which would disqualify a juror. . . . It . . . [had to] be certain, and not merely possible or contingent . . .. It . . . [had to] be direct and personal . . .." *Northampton* v. *Smith*, 11 Met. 390, 395-396 (1846).[9]

---

[7] We pass any question whether this argument could have any validity with respect to the companion indictments for larceny of a motor vehicle and for unlawfully carrying a revolver in a motor vehicle.

[8] Rule 3:25, entitled "Code of Judicial Conduct," was promulgated by the Supreme Judicial Court on December 4, 1972, with an effective date of compliance of January 1, 1973. 359 Mass. at 854. It was modeled largely on the Code of Judicial Conduct adopted by the House of Delegates of the American Bar Association on August 16, 1972. The Canons of Judicial Ethics as originally adopted by the A.B.A. in 1924 (see *Matter of DeSaulnier*, 360 Mass. 787, 809-810 [1972]; *Matter of Troy*, 364 Mass. 15, 69-70 [1973]) were generally controlling at the time of the actions of the judge (June of 1972) which are complained of in this case. *Matter of Morrissey*, 366 Mass. 11, 16 (1974).

[9] Supreme Judicial Court Rule 3:25, Canon 3C(1)(c), 359 Mass. 845 (1972), talks in terms of a "financial or other property interest in the subject matter in controversy." A "financial interest," according to

Tested by that standard, there was no need for the judge to disqualify himself from accepting the pleas in the present case. He had severed his official connection with the bank upon his becoming a judge in 1968. He had divested himself of his stock interest sometime during the year preceding the year in which he accepted the pleas.[10] His only connection with the bank in 1972 was as the accommodation maker of a $1,500 note held by the bank (see n. 2), and there is nothing whatsoever to suggest that any disposition of any of the indictments would have resulted in his being called upon to pay the note.

*Exceptions overruled.*

GOODMAN, J. (concurring in result). I agree with the result because the trial judge, after taking the guilty pleas and prior to sentencing, made known to counsel for the defendants his relationship to the bank; he indicated that he would disqualify himself from sentencing the defendants if requested to do so. Defendants' counsel, though thus informed, did not protest the trial judge's having taken the guilty pleas and indicated that he did not want the judge to disqualify himself.

---

Canon 3C(3)(c), "means ownership of a substantial legal or equitable interest, or a relationship as director, advisor, or other active participant in the affairs of a party . . .." 359 Mass. at 845-846.

[10] Canon 26 of the former A.B.A. Code of Judicial Ethics provided in pertinent part: "A judge should abstain from making personal investments in enterprises which are apt to be involved in litigation in the court; and, after his accession to the Bench, he should not retain such investments previously made, longer than a period sufficient to enable him to dispose of them without serious loss. . . ." Supreme Judicial Court Rule 3:25, Canon 5C(3) (1972), provides: "A judge should manage his investments and other financial interests to minimize the number of cases in which he is disqualified. As soon as he can do so without serious financial detriment, he should divest himself of investments and other financial interests that might require frequent disqualification." 359 Mass. at 849.