**DEPARTMENT OF ENERGY, et al., Petitioners,**

v.

**Honorable Clarence A. BRIMMER, Respondent.**

**LITTLE AMERICA REFINING COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants-Appellants.**

Nos. 10–40, 10–41 and C–81–0263.

Temporary Emergency Court of Appeals.

Argued Nov. 16, 1981.

Decided March 3, 1982.

Mark Kreitman, Dept. of Energy, Washington, D. C., argued the cause for appellants-petitioners. With him on the brief were Nancy C. Crisman, Thomas H. Kemp, Marcia Sowles, and Robert C. Power, Washington, D. C.

Kenneth L. Bachman, Jr., Sara D. Schotland, Eugene M. Goott, and John G. Finneran, Jr., Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., for intervenor Tosco Corp.

Daniel Joseph, Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., argued for intervenor Mobil Oil Corp. With him on the brief were R. Bruce McLean, Harry R. Silver, Edward L. Rubinoff, Clinton R. Batterton, and David A. Holzworth, Washington, D. C.

Dan Bushnell, Kirton, McConkie & Bushnell, Salt Lake City, Utah, argued the cause for plaintiff-appellee. With him on the brief were Stanley K. Hathaway and John B. ("Jack") Speight, Hathaway, Speight & Kunz, Cheyenne, Wyo., and William J. Mutryn, Joseph L. Bianculli, and Barry S. Landsberg, Casson, Calligaro & Mutryn, Washington, D. C.

Before CHRISTENSEN, JAMESON, and DUNIWAY, Judges.

DUNIWAY, Judge:

The Department of Energy appeals from an order of the district court styled a preliminary injunction. We find that the order is appealable as a final order, and we reverse. In the alternative, we find that the district court acted beyond its jurisdiction, and we order that a writ of mandamus issue. We vacate the order of the district court and direct that the action be dismissed with prejudice. We affirm the action of the district judge in refusing to disqualify himself. We dismiss as moot a motion that the attorneys for the plaintiff be disqualified.

## I. *Facts.*

The background of this case is the Entitlements Program administered by the Department of Energy, 10 C.F.R. § 211.67. Under this program, refiners with greater access to cheaper, price-controlled old oil made cash payments to refiners with access to less old oil. A refiner needed one "entitlement" for each barrel of old oil that it refined. Each month the Department calculated the number of entitlements to be allocated to each refiner by multiplying that refiner's production for that month by the ratio of old oil refined to total oil refined. The result was published as an entitlements list. Those refiners who processed a greater proportion of old oil than the national average had to buy entitlements from refiners who processed a smaller proportion of old oil. Each month the Department determined the price of an entitlement for that month. The refiners were required to provide relevant data to the Department. There is a more detailed discussion of the Entitlements Program in our earlier cases. *Cities Service Co. v. Federal Energy Administration*, Em.App., 1975, 529 F.2d 1016, cert. denied, 1976, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184; *Pasco, Inc. v. Federal Energy Administration*, Em. App., 1975, 525 F.2d 1391.

The Department can grant exception relief when an applicant establishes that it is suffering "special hardship, inequity or unfair distribution of burdens . . ." as a result of the regulatory program. 42 U.S.C. § 7194(a). *See also* 10 C.F.R. § 205.-50(a)(1). Application for an exception is made to the Office of Hearings and Appeals which issues a proposed decision and order. 10 C.F.R. §§ 205.53–56. A party may then file a statement of objections. 10 C.F.R. § 205.62. After consideration of the entire record, a Decision and Order is issued by the Office. 10 C.F.R. § 205.69B(a). An

applicant may then appeal to the Federal Energy Regulatory Commission. 42 U.S.C. § 7194(b). The petition, replies, and possibly a hearing, lead to a Proposed Decision and Order. 10 C.F.R. §§ 1.40(d), (e) and (j)(1). Written comments are then filed and a Final Order issues. 18 C.F.R. § 1.40(j)(3) and (k). This Final Order is the final agency action subject to judicial review. 42 U.S.C. § 7194(b).

When this appeal was briefed, Little America had four requests for exception relief pending at the Office of Hearings and one pending at the Commission. Since then the Office of Hearings has issued decisions on three of the applications before it. Little America has declared its intention to appeal two of them to the Commission. There are as yet no final agency actions in these matters. The merits of the various exception claims were not before the district court and are not before us. However, Little America's claims in this action of irreparable injury presuppose a successful outcome of some or all of the exception claims.

On January 28, 1981, the President issued Executive Order 12287 which decontrolled all crude oil and refined petroleum products. This ends the Entitlement Program and authorizes the Secretary of the Department "to take such actions as he deems necessary to implement the Order, including the publication of entitlement notices for periods prior to [the] Order and the establishment of a mechanism for entitlements adjustments for periods prior to [the] Order." The Department gave notice of a public conference, 46 Fed.Reg. 11291 (February 6, 1981), issued an explanatory ruling, 46 Fed.Reg. 12945 (February 19, 1981), proposed regulations, 46 Fed.Reg. 15112 (March 6, 1981), and issued final regulations, 46 Fed.Reg. 36092 (July 13, 1981). The final regulations provide for the issuance of a "clean-up list" to take care of adjustments that can be made at that time. If judicial or administrative decisions are made after the publication of the clean-up list, the producers will be able to determine the effect of these upon their liabilities and credits without publication of further lists.

The Department claims that it retains the power to enforce the settling of these liabilities and credits just as it had the power to enforce the Entitlements Program. Section 4 of Executive Order 12287 authorizes the Secretary "to take such other actions as he deems necessary to ensure that the purposes of this order are effectuated."

At the present time no final clean-up list has been published, nor has the Entitlements List for the period January 1, 1981 to January 27, 1981 been published.

II. *Proceedings Below.*

On September 3, 1981, Little America filed a verified complaint, a motion for preliminary injunction, and a request for a temporary restraining order. Little America complained that it might have difficulty in recovering from other refiners anything that might become due to it as a result of any final agency decisions that might occur after the publication of the final clean-up list. It claimed that the clean-up regulations violated the right to due process guaranteed both by the Fifth Amendment to the Constitution of the United States and by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). It claimed that the clean-up regulations violated the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 *et seq.* in that one stated purpose of that Act was to preserve the competitive viability of small refiners, 15 U.S.C. § 753(b)(1)(D). It asked for injunctive relief.

The complaint also spoke of delay in the Department's processing of Little America's applications for exception relief. This delay was said to violate constitutional guarantees of due process and equal protection, as well as 5 U.S.C. § 551 *et seq.* and 15 U.S.C. § 751 *et seq.* Little America asked the court for an order that the Department proceed to conclude Little America's pending exceptions decisions as expeditiously as practicable. It also said that it was seeking "a judgment that the [Department] injured [Little America] by unreasonably and unlawfully withholding final decisions on its pending administrative claims," and asked the court to establish a date by which the

Department must issue final decisions in all pending requests for administrative relief, although it failed to include these last-mentioned requests in its prayer for relief.

The district court entered an *ex parte* temporary restraining order on September 10, 1981. A hearing on the motion for a preliminary injunction was held on September 21, 1981. Much evidence was presented on the financial losses claimed to have been suffered by Little America. There was some testimony on the anticipated difficulties of collecting from other refiners what might be granted by the Department after the publication of the final clean-up list. At this hearing the district court denied the Department's motions to vacate the temporary restraining order and for recusal of the judge. (The ground given for recusal was that the judge held stock in four oil companies other than those which are parties to this action.) After an extension of the temporary restraining order, the district court entered a preliminary injunction on September 24, 1981.

The preliminary injunction was in four parts. Part (a) prevented the Department from requiring Little America to purchase further entitlements. Part (b) prevented the Department from issuing any further Entitlements List until it allowed Little America to sell entitlements to the value of $51,306,275. Part (c) ordered the Department to issue before September 30, 1981, a notice allowing Little America to sell entitlements to that same value. (This was subject to a then outstanding order of another district court, but that order is no longer of any effect.) Part (d) stated that one way to comply with parts (b) and (c) was this: the Department should authorize the sale of the entitlements; Little America should sell them and pay the proceeds to the clerk of the district court; the district court should place the funds in an escrow account; the funds should later be paid to Little America to the extent that it prevailed in the administrative and judicial proceedings for exception relief and otherwise as determined by the Department. While on the face of the injunction, part (c) unconditionally orders the Department to authorize Little America to sell entitlements and part (d) does no more than *suggest* the use of an escrow account, we think that the district court intended the orders to the Department to be conditioned upon Little America's agreement to use of an escrow account. We assume that Little America was not granted exception relief by the district court, but only granted a mechanism through which any relief later granted by the Department could be collected. Little America assures this court that all that is at issue in this case is the availability of a potential remedy, and this demands that we give the injunction the limited reading just suggested.

At one point in the rule-making procedure that led to the clean-up regulations, the Department had proposed use of a more general escrow procedure, but this was not made a part of the final regulations.

The order of the district court gave to Little America all the relief that it had requested to put right the claimed deficiencies in the clean-up regulations. It did not grant any of the relief claimed to be necessary as a remedy for the alleged delays in the Department's processing of the claims for exception relief.

The district court refused the motion of the Department that the trial on the merits be consolidated with the hearing on the preliminary injunction under F.R.Civ.P. 65(a). It also refused to certify an interlocutory appeal in accordance with the provisions of 28 U.S.C. § 1292(b) as provided by 12 U.S.C. § 1904 note § 211 (d)(2).

Tosco Corporation was granted leave to intervene in the action. It objected to any delay in the issuance of the Exemptions List for January, 1981, because it expected to receive some 7–9 million dollars as a result of that list. Navaho Refining Company supported this view as *amicus curiae*. Mobil Oil Corporation filed a brief as *amicus curiae*. It objected to the proposal that Little America receive $51 million from the other oil companies, but joined with Little America in criticizing the clean-up regulations. The district judge did not have any stock in any of these oil companies.

### III.  *The Jurisdiction of this Court.*

■  The jurisdictional questions raised in this case are very similar to those which we have recently decided in another appeal, *MGPC, Inc. v. Department of Energy,* 673 F.2d 1277 (Em.App.1982). This allows us to be brief.  We hold that the order appealed from is appealable as a final judgment for two reasons.  In the first place, the order gave Little America substantially everything that it asked for in the district court.  It is true that it did not get the requested injunction ordering the Department to proceed expeditiously, but that injunction would have been platitudinous and the request was frivolous.  It is also true that it got neither the declaration that the Department had acted unreasonably and unlawfully in withholding its decisions, nor the fixing of a final date for agency action, but we do not believe that Little America was serious in those requests.  It. complained only of delays and not of substantial misconduct, and such a complaint could not conceivably justify action by a district court.  Further, counsel for Little America now insist to this court that this litigation focuses exclusively on the clean-up mechanism.  Thus, in essence, though not in form, the order is a final judgment.

In the second place, we agree with the Department that the order is appealable under the rule of *Cohen v. Beneficial Loan Corp.,* 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528.  *See Marine Petroleum Co. v. Champlin Petroleum Co.,* Em.App., 1980, 657 F.2d 1231, 1239–42.  If the order is not subject to review now it will never be reviewed at all, and there is a strong public interest that the question be decided so that the Department can put into effect the Executive decision to end the Entitlements Program.

### IV.  *Mandamus.*

■  In the alternative, if we are wrong in our conclusion that the order of the district. court is appealable as a final order, we hold that this is an appropriate case in which to issue a writ of mandamus to the district court.  *See, generally, MGPC,*

*Inc. v. Department of Energy, supra.*  First, it is clear to us that the district court had no jurisdiction to consider the complaint of delay in the administrative process for exception relief (counts 4–7 of the Complaint).  The mere fact that the Department has taken a long time to reach decisions on the various applications of Little America does not constitute a fundamental infirmity in the administrative proceeding.  Little America has failed to exhaust its administrative remedies before coming to the district court, and the district court is without jurisdiction to consider the question of delay.  Secondly, the district court had no power to issue a preliminary injunction.  As a general rule, no agency order may be enjoined by the district court save in a final judgment.  12 U.S.C. § 1904 note section 211(d)(1).  There is a narrow exception to this general rule: a district court may enjoin a party in litigation before it, 12 U.S.C. § 1904 note section 211(d)(2); but this is not an independent grant of jurisdiction.  It applies only when the district court already has jurisdiction over the parties.  It does not authorize persons who are parties to administrative proceedings to rush to court for injunctive relief.  The only relief sought by Little America, other than injunctive relief, was a declaration that the Department has acted unreasonably and unlawfully in withholding decisions.  However, we have already said that the district court had no jurisdiction to consider this claim.  In any event, we regard the request as a sham.  It cannot be used to manufacture jurisdiction so as to justify a preliminary order giving injunctive relief.

### V.  *The Merits.*

The district court had power to issue the injunction only if it was embodied in a final judgment.  As a final judgment it is reviewable.  The district court made findings of fact to support the entry of the injunction.  It found that Little America would suffer immediate irreparable injury unless the injunction were granted, that it had raised substantial, serious, difficult and doubtful questions, which are a fair ground

for litigation, and that it had established a substantial likelihood that it would prevail on the merits. It found a "substantial and certain danger" of irreparable injury. It found that no other persons would suffer significant injury and that the public interest would be served by the issuing of the preliminary injunction.

■ The record does not support these findings of fact. There was no evidence that Little America would suffer irreparable harm if the injunction did not issue. The clean-up mechanism, like the Entitlements Program, relies upon individual private transactions between those with a legal obligation to buy entitlements and those with extra entitlements which they can sell. We will not now assume that those who must buy will choose to avoid their legal obligations, nor that these obligations will be unenforcible. There was not sufficient evidence of widespread bankruptcies among the hundreds of companies involved to show that those with legal obligations would not be able to fulfill them.

There was no showing that Little America was likely to succeed in its administrative proceedings. Since the Office of Hearings and Appeals has now ruled against Little America on most of its applications the chances of success are even more slender than when the preliminary injunction was sought.

The unsupported fear that Little America might be unable to gain the benefits of an agency ruling that almost certainly will not occur is outweighed by the certain harm that the other companies will suffer in being forced to contribute to an escrow account, the primary function of which is to protect Little America. There is no reason why Little America should be in a preferred position.

There was no showing that the injunction serves the public interest. In fact, there is a very strong public interest that the injunction not issue. So far as has been shown here, the Department has followed the proper administrative procedures in developing regulations to give effect to the Executive Order. It should be allowed to go about this work in an orderly manner without the intervention of the federal judiciary. Under 12 U.S.C. § 1904 note section 211(d)(1), a regulation may not be enjoined unless it is "in excess of the agency's authority, was arbitrary or capricious, or was otherwise unlawful under the criteria set forth in [5 U.S.C. § 706(2)]" and an order may not be enjoined unless it is "in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence."

These statutory limitations upon the equitable powers of the district court indicate a legislative judgment that the public interest is best served by allowing injunctions only when the agency has abused the powers that are delegated to it. In this case an attempt was made to enjoin orders rather than regulations, and we cannot sustain the injunction unless the orders of the agency were, or rather would have been, in excess of its authority. The injunction prevents the Department from issuing its January Entitlement List and its final clean-up list. There is not the slightest reason to believe that the issuance of these lists would be arbitrary or capricious or otherwise in excess of the agency's authority. On the contrary, the Department is obliged to issue these lists under its own regulations. Little America does not challenge those regulations nor the content of the orders that it seeks to block. The entry of the injunction was an abuse of discretion.

## VI. *Disqualification of Attorneys.*

Mobil Oil, *amicus curiae* in this case, has moved or suggested that all Little America's attorneys of record be disqualified. They point out that the certificate required by our Rule 21(d) shows that Melvin Goldstein acted as a lawyer in this proceeding.

Melvin Goldstein was, until September, 1980, the Director of the Office of Hearings and Appeals of the Department of Energy. He had the authority to issue orders with respect to applications for exceptions, to conduct hearings and investigations, to promulgate procedural rules and to develop guidelines for the carrying out of these

tasks. He did in fact conduct the hearings on Little America's application for exceptions, supervised the internal deliberations of the Office of Hearings and Appeals, and personally signed decisions and proposed decisions issued to Little America. Mr. Goldstein is now one of the lawyers for Little America in a suit in which it complains of delays in the process that was until recently supervised by Mr. Goldstein and of the lack of a guarantee that it will be able to benefit from any favorable decisions that may eventually result from that process.

On September 4, 1981, Mr. Goldstein wrote to the Department of Energy explaining his previous role and describing the new clean-up regulations. He said that he had not been involved in the change in regulations. He added:

> I have been asked to advise and counsel a firm which may wish to challenge the new mechanism adopted by the Department of Energy as described above. While at the DOE I was personally responsible for issuing decisions with respect to this firm's right to receive entitlement exception relief. These claims are now pending before the DOE. I am, of course, precluded from becoming involved in the merits of those proceedings. However, the issues with respect to which I have now been asked to provide advice are separate from the determination of the firm's right to have an exception. The issues in which I would now become involved concern only the adequacy of the mechanism available to collect funds which the client would be entitled to receive if the ultimate determination were made that it should receive an exception.
>
> My participation would not include appearances before the Department of Energy or any other government official. My involvement would be to render counsel to the client and the client's attorneys. The name of my law firm might well appear on papers submitted to appropriate governmental entities; however, I do not envision my own name appearing on the papers.

He asked for the Department's views on the question whether his prospective employment was precluded by either the canons of ethics or the Department's own conflict of interest regulations.

On September 11, 1981, the Department replied that since Goldstein would be limiting himself to advice and counsel and would not be acting in a representative capacity (by appearance or communication) nor appearing before the Department, he was precluded by neither 42 U.S.C. § .7215(a) nor 18 U.S.C. § 207(a). It disclaimed having the power to make binding interpretations of disciplinary rules, but gave its opinion that DR9–101(B), as interpreted in *Formal Opinion 342* of the American Bar Association's Committee on Ethics and Professional Responsibility, did not bar the employment.

Mobil Oil argues that DR9–101(A) and (B) require the disqualification of Mr. Goldstein and all his associates. We express no opinion on this question. Since we order that the judgment of the district court be vacated and the suit dismissed with prejudice, the question of disqualification of the attorneys for Little America is moot.

VII. *Recusal of the District Judge.*

 The statute provides that a judge shall disqualify himself when he "knows that he . . . has a financial interest in the subject matter in controversy . . . or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). It further provides that " 'financial interest' means ownership of a legal or equitable interest, however small. . . ." 28 U.S.C. § 455(d)(4). These provisions were enacted in order that the statutory grounds for disqualification of a judge should conform generally with the canons of the Code of Judicial Conduct of the American Bar Association. H.R. Report No. 93–1453, [1974] U.S. Code Cong. & Ad.News 6351, 6351. There was also a concern that a "judge's *direct* economic or financial interest, even though relatively small, in the *outcome* of the case may well be inconsistent with due process." *Id.* at 6353 (emphasis supplied). *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 1968, 393 U.S. 145, 148, 89 S.Ct.

337, 339, 21 L.Ed.2d 301; *Tumey v. Ohio,* 1927, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749.

■ We hold that the judge who holds stock in other participants in the Entitlements Program but not in any of the parties before him does not have a financial interest in the subject matter of the litigation before him. The use of the term "subject matter" suggests that this provision of the statute will be most significant in *in rem* proceedings. *See* E. Wayne Thode, *Reporters Notes to A.B.A. Code of Judicial Conduct,* 66 (1973). We hold that the judge does not have a direct economic or financial interest in the outcome of the case, and thus could hear it without contravening the constitutional requirements of due process. The question that remains is whether the judge had some other interest that could be substantially affected by the outcome of the proceeding. There is a possibility that the value of the shares held by the judge might be affected in some very small way by the outcome of this case, but this would be such a slight effect as not to be substantial. Under these circumstances, it was not error for the district judge to refuse to recuse himself. *See* Advisory Opinion No. 49 of the Advisory Committee on Judicial Activities, Code of Judicial Conduct for United States Judges.

In No. 10–41, the motion to dismiss appeal is denied. The order appealed from is vacated. The judge's refusal to disqualify himself is affirmed. The motion to disqualify the plaintiff's attorney is denied. The case is remanded to the district court with instructions to dismiss the action with prejudice.

In No. 10–40, let a writ of mandamus issue ordering the trial court to vacate its injunction and to dismiss the action with prejudice.