UNITED STATES of America

v.

Harvey NOBEL, Appellant.

No. 82–1234.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Nov. 15, 1982.

Decided Dec. 17, 1982.

Rehearing and Rehearing In Banc
Denied Jan. 5, 1983.

Jerome R. Richter, Ronald H. Surkin, Stephen M. Orlofsky, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellant.

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Mary C. Spearing, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Defendant Harvey Nobel appeals from the judgment of conviction entered after a jury found him guilty on fourteen counts of a fifteen-count indictment charging violation of 18 U.S.C. § 2314 (interstate transportation of a security taken by fraud). Nobel contends that the judgment of the district court should be reversed and the case remanded for a new trial because the trial judge failed to disqualify himself as required under 28 U.S.C. § 455 and the trial judge's tone of voice in addressing Nobel during the course of his testimony improperly communicated to the jury the judge's view that Nobel was guilty. We will affirm.

### I.

*The Recusal Issue*

The indictment charged that Nobel, the owner of Beaverbrook Motors, a New Jersey towing service, and Christine Gilch, an employee of Insurance Company of North America [INA], devised a scheme to defraud INA pursuant to which INA paid Nobel's company approximately $476,000 for nonexistent towing services. Gilch pled guilty. Nobel pled not guilty and his five-day jury trial began March 15, 1982.

On that day, shortly before the beginning of trial, the following colloquy occurred in the chambers of the district court:

THE COURT: Counsel will recall a conference on the 18th of December, 1981, at 8:30 A.M., and I related that I am a substantial holder of INA stock.

INA is not a party; nor is it the subject matter.

I related that I didn't believe it was a basis for recusal.

Now, when we had this conference neither Mr. Casper [Gilch's attorney] nor Mr. Nasuti [Nobel's attorney] were yet retained and my notes reflect that Mr. Casper anticipated no problem, and if, as I believe, there is not basis for recusal, would you, if you are so disposed, so relate.

MR. NASUTI: Me, Your Honor?

THE COURT: Yes.

MR. NASUTI: Yes, Your Honor.

THE COURT: So you agree there is no basis for recusal.

MR. NASUTI: My research reveals that, agrees with Your Honor.

THE COURT: All right.

MR. NASUTI: With Your Honor's research and conclusion.

(31a–32a). There is no dispute that the December 18, 1981 conference occurred, albeit unreported. There was no further discussion of recusal following the March 15, 1982 conference.

Section 455 provides in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

. . . .

(4) [When] [h]e knows that he, individually or as a fiduciary, or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

. . . .

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

. . . .

(4) "financial interest" means ownership of a legal or equitable interest, however small . . . .

. . . .

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

28 U.S.C. § 455 (1976 & Supp. IV 1980).

The statute on judicial disqualification in its present form was enacted in 1974 after Congress recognized that the "uncertain language" in the prior statute requiring disqualification "in any case in which [the judge] has a substantial interest" placed "the judge on the horns of a dilemma". H.R.Rep. No. 1453, 93d Cong., 2d Sess. 2, *reprinted* in 1974 U.S.Code Cong. & Ad. News 6351, 6352 [hereinafter "House Report"]. In an effort to ameliorate that situation, Congress turned to the language of the 1972 American Bar Association Code of Judicial Conduct which had been adopted by the Judicial Conference of the United States in 1973. In amended section 455, Congress used language which paralleled that of Canon 3C of the Code dealing with disqualification in most significant respects.[1]

Subsection (a) of section 455 sets out the general policy of disqualification "in any

---

1. Section 455 as amended in 1974 allowed the parties to waive a disqualification ground arising under § 455(a), but prohibited waiver of the specific grounds for disqualification enumerated in § 455(b). At that time, the Code permitted a waiver of a financial interest of the judge in a party or the subject matter if it was "insubstantial", and a family relationship of the judge to a party or lawyer if it was "immaterial." Code of Judicial Conduct Canon 3D (1972). Canon 3D was amended in 1979 to conform to the statute; it is now substantively identical to § 455(e). Differences exist with regard to the manner of effectuating a waiver. *See* text at 236–237 *infra*.

proceeding in which [the judge's] impartiality might reasonably be questioned." The general language of this subsection is particularized in subsection (b) which enumerates specific disqualification standards which were designed to "eliminate the uncertainty and ambiguity arising from the language in the [prior] statute." House Report at 5–6, *reprinted in* 1974 U.S.Code Cong. & Ad.News at 6355.

Subsection (b)(4) deals with disqualification either because of a "financial interest" held by the judge, the judge's spouse or minor child living at home or because such persons have another interest that could be substantially affected by the outcome of the proceedings. Such an interest is disqualifying in three instances. Two are not applicable here and defendant does not suggest otherwise. The district judge's financial interest in INA is patently not in "a party" since the only parties in a criminal action other than the United States are the named defendants. Similarly, under the circumstances in this case the judge's financial interest in INA was not an interest "that could be substantially affected by the outcome of the proceeding". In some instances, the resolution of a criminal proceeding might have a substantial effect upon the financial affairs of the victim company, such as by triggering personal liability of the defendant, insurance payments, or even the application of collateral estoppel which could in turn "substantially affect" the interests of stockholders of the victim company. *See, e.g., Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). In this case, however, by the time of the criminal trial a settlement had been effected which called for defendant to repay INA for substantially all of the funds which defendant received as a result of the fraud.[2] Therefore, whatever applicability this statutory language might have in another instance, it did not mandate disqualification in this case.

■ Accordingly, defendant's argument for the applicability of subsection (b)(4) focuses upon his claim that a financial interest in the victim of a crime is a financial interest in "the subject matter in controversy". The accepted standard for reviewing judicial disqualification decisions is to determine whether there has been an abuse of discretion. *United States v. Schreiber,* 599 F.2d 534, 536 & n. 1 (3d Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). However, whether a financial interest in a corporation which was the victim of the crime at issue is a "financial interest in the subject matter in controversy" is a matter of law as to which our review is plenary.

■ We conclude that the defendant's construction of "subject matter in controversy" as encompassing the crime victim is not the plain meaning of the language. In a criminal action, the victim is not the "matter acted upon", the "matter presented for consideration", nor "the topic of dispute in a legal matter", which are the only arguably relevant definitions of "subject matter". *See* Webster's Third New International Dictionary (1961). The affairs of INA, the company defrauded, were not being resolved by the criminal proceeding nor were they the topic of dispute.[3]

A similar statutory construction was reached in *Department of Energy v. Brimmer,* 673 F.2d 1287, 1295 (Em.App.1982), where the court stated, "[t]he use of the term 'subject matter' suggests that this provision of the statute will be most significant in *in rem* proceedings." The court held that a judge who owned stock in other

2. Under the settlement agreement, defendant agreed to pay $523,412.72 as of October 28, 1981, which is almost $50,000 more than was taken from INA and which was apparently calculated by applying an interest rate of 15%.

3. In *United States v. Ravich,* 421 F.2d 1196, 1205–06 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), decided before the statute was amended to its present form, the court held that a judge who owned shares of stock in a bank that was robbed had no financial interest in the criminal case because the result in the prosecution could make no difference to the bank or its shareholders. *See also United States v. Sellers,* 566 F.2d 884, 886–87 (4th Cir.1977).

participants in a federal Entitlements Program administered by the Department of Energy but who did not have stock in the refiner whose claims were at issue did not have a financial interest in the subject matter of the litigation. We hold that a judge presiding over a criminal action who holds stock in a corporate victim of the crime does not have a "financial interest in the subject matter in controversy."

■ Defendant argues that even if disqualification was not required under section 455(b)(4), the judge should have disqualified himself under section 455(a) because "his impartiality might reasonably be questioned." Congress designed this general standard "to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case." House Report at 5, *reprinted in* 1974 U.S. Code Cong. & Ad.News at 6354–55. The focus under the statute is on the objective appearance of bias, rather than bias-in-fact. *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); Note, *Judicial Disqualification in the Federal Courts: Maintaining an Appearance of Justice Under 28 U.S.C. § 455,* 1978 U.Ill.L.F. 863, 871; Note, *Disqualification of Judges and Justices in the Federal Courts,* 86 Harv.L.Rev. 736, 745 (1973).

■ We recognize that there have been cases in which appellate courts have held that a trial judge's financial interest in the victim of a crime did not require disqualification in the subsequent criminal proceeding. In *United States v. Ravich,* 421 F.2d 1196, 1205–06 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), the court held that disqualification in such a situation was left to the conscience of the particular judge.[4] In *United States v. Sellers,* 566 F.2d 884, 887 (4th Cir.1977), the court concluded that, "No reason appears why owning stock in a holding company owning a bank that is robbed would lead to any reasonable apprehension that the stockholder judge would be partial."[5] With deference to the other circuits, we conclude otherwise. The *Ravich* case was decided under the more subjective standard which prevailed before the 1974 amendments eliminated the subjective test.[6] The *Sellers* case was decided by a divided panel. Judge Butzner dissented, stating, "It is reasonable to conclude that any person who has substantial holdings in a bank that is the victim of a robbery has an interest that is different from that of the general public in seeing the criminal convicted." 566 F.2d at 888 (footnote omitted). We believe that this view more nearly accords with the legislative intent in amending the statute to contain an objective standard.

■ We stress that we find no bias-in-fact by the trial judge in this case, nor has any been charged.[7] However, one of the principal functions of a judicial disqualification statute is to maintain public confidence in the integrity of the judicial process, which in turn depends on a belief in the impersonality of judicial decisionmaking. Note, *Disqualification of Judges and Justices in the Federal Courts,* 86 Harv.L.Rev. at 746–47. We adopt the view that a judge who owns a substantial interest in the victim of a crime must disqualify himself or

---

4. The trial judge's ownership of stock in the victim bank was worth between $10,000 and $15,000 which represented .0072% of the bank's 5,391,527 shares. 421 F.2d at 1205.

5. The value of the stock in question does not appear from the opinion. The court noted that the judge and his children, at the time of the trial, held less than 1/25th of 1% of the stock, and at the time of denial of the motion for a new trial, held less than 2/25ths of 1% of the stock. 566 F.2d at 887.

6. The earlier statute required disqualification by a judge, *inter alia,* under circumstances which would "render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." 28 U.S.C. § 455 (1970) (amended 1974).

7. Personal bias on the part of a judge against a party, is a separate, mandatory ground for disqualification under the overlapping provisions of 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1).

herself in the subsequent criminal proceeding because the strict overarching standard imposed by section 455(a) requires that the appearance of impartiality be maintained.[8]

■ The failure of the trial judge to disqualify himself in this case, *sua sponte,* does not require reversal of the conviction. The statute differentiates between disqualification under sections 455(a) and 455(b) in one significant respect. A judge is prohibited from accepting from the parties a waiver of the judge's disqualification where it is based on any of the specific grounds set forth in subsection (b). In contrast, where the basis of the judge's disqualification is because "his impartiality might reasonably be questioned" under subsection (a), a waiver is permitted after a full disclosure on the record of the bases for disqualification. 28 U.S.C. § 455(e); *see* House Report at 7, *reprinted* in 1974 U.S.Code Cong. & Ad. News at 6357.

The record shows that the district judge in this case made a full disclosure on the record of the relevant facts which now serve as the grounds on which new counsel bases the disqualification claim.[9] Although the colloquy between the judge and trial counsel was apparently directed to the possibility of disqualification under section 455(b)(4), and did not specifically address disqualification under section 455(a), the information disclosed was sufficient to put defense counsel on notice of the relationship between the judge and INA. *See United States v. Conforte,* 624 F.2d 869, 878–82 (9th Cir.1980). This is not a case where the nature of the disqualifying relationship was not discovered until the trial was concluded. *Compare Potashnick v. Port City Construction Co.,* 609 F.2d at 1114–15. The judge advised defense counsel before the trial began that he had a financial interest in INA and that this interest was substantial. Counsel made no request for any further information either at the time of the on-the-record colloquy or at any time thereafter during the five-day trial.

■ We believe that under the circumstances of this case the failure to object constitutes a waiver of disqualification covered by section 455(e). The statute in its present form, unlike the Code of Judicial Conduct,[10] does not regulate the detailed

8. *See Anderson v. Commonwealth,* 117 S.W. 364, 368–69 (Ky.1909) (criminal action against person who had defrauded a bank; trial judge who was stockholder and director of second bank which was major creditor of defrauded bank could not have the required "equipoise of mind"); *cf. Salina v. Commonwealth,* 217 Va. 92, 225 S.E.2d 199 (1976) (defendant on trial for grand larceny from two banks has right to challenge for cause any venireman who was a stockholder in either bank). *But see Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976) (divided court upheld failure of trial judge to disqualify himself because he was an acquaintance of the murder victim).

9. The government urges that because there was no objection raising the disqualification of the district judge under § 455, the plain error standard is applicable to our review of this issue. It correctly cites our prior decision in *United States v. Schreiber,* 599 F.2d 534 (3d Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979), as support. We need not reach the applicability of the plain error doctrine because in this case, unlike *Schreiber* where "[t]he subject of impartiality was not broached until the hearing on Schreiber's motion for a new trial," *id.* at 539 (concurring opinion), there is an adequate basis for finding a waiver under the statute.

10. Canon 3D of the Code of Judicial Conduct was amended in 1979 to read:

A judge disqualified by the terms of Canon 3C(1), except in the circumstances specifically set out in subsections (a) through (e), may, instead of withdrawing from the proceeding, disclose on the record the basis of his disqualification. If, based on such disclosure, the parties and lawyers, independently of the judge's participation, all agree in writing that the judge's disqualification should be waived, the judge is no longer disqualified and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding.

Code of Judicial Conduct Canon 3D (1979). Although Congress was aware of the formal procedure which could be required for waiver, no such procedure was included in the statute. *See, e.g., Judicial Disqualification: Hearings on S. 1064 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. On the Judiciary,* 93d Cong., 1st Sess. 82 (1973) [hereinafter "Senate Hearings"] (statement of Judge Traynor) (explaining and advocating a procedure requiring written waiver outside of the presence of the judge).

manner in which the waiver must be effected. The advantages of following the waiver procedure outlined in the Code are manifest but it is sufficient under the statute if the judge provides full disclosure of his or her relationship at a time early enough to form the basis of a timely motion at or before trial and under circumstances which avoid any subtle coercion.[11] The election to proceed after full disclosure of the relevant facts satisfies those requisites and constitutes an effective waiver under the statute.

## II.

### *The Due Process Issue*

The second ground on which defendant bases his request for a new trial is his contention that the trial judge denied him a fair trial by giving the jury the impression that he believed him to be guilty. Defendant points out that the trial judge interrupted his testimony and that of Ms. Gilch more frequently than that of other witnesses. These interruptions sought only more responsive or more audible answers, but defendant argues that the jury drew an inference that the trial judge believed him guilty from their frequency and acidic tone. He also claims that the manner and tone used by the trial judge in delivering the charge to the jury conveyed the court's impression of defendant's guilt.

■ Due process requires that the trial judge conduct and control a trial so that it is fair and orderly. *See United States v. Robinson,* 635 F.2d 981, 984 (2d Cir.1980), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981); *United States v. Hickman,* 592 F.2d 931 (6th Cir.1979); *United States v. McDonald,* 576 F.2d 1350, 1358 (9th Cir.), *cert. denied,* 439 U.S. 830, 927, 99 S.Ct. 105, 312, 58 L.Ed.2d 124, 320 (1978). The judge's participation must never reach the point where "it appears clear to the jury that the court believes the accused is guilty." *United States v. Robinson,* 635 F.2d at 984 (quoting *United States v. Nazzaro,* 472 F.2d 302, 303 (2d Cir.1973)).

■ A trial judge must be vigilant not to let his or her tone of voice or gestures indicate the judge's view on the defendant's guilt or innocence. Where a videotape or sound recording of the trial is in the appellate record, it may be used to support the claim that a defendant was denied a fair trial by the trial judge's actions. *Cf. United States v. Robinson,* 635 F.2d at 984 n. 2 (appellate court unable to evaluate claims of prejudice deriving from trial court's facial expressions and tone of voice in the absence of video or sound recording of the trial); *United States v. Weiss,* 491 F.2d 460, 468 n. 2 (2d Cir.) (same), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). Even with such aids, it is unlikely that they can fully convey subtle impressions which depend on the entire atmosphere of the trial and which cannot practically be replicated for appellate evaluation, unless the unfairness is manifest.

■ Trial counsel for the defendant did not interpose a contemporaneous objection to the trial judge's interruptions or tone of voice nor did he request a curative instruction on the charge. Consequently, we review these contentions under the plain error standard. *See United States v. Schreiber,* 599 F.2d at 535. To meet that standard the error must be " 'grievous', or 'so fundamental in nature as to deprive a party of fundamental justice', or otherwise constitut[e] a 'manifest miscarriage of justice.' " *Id.* (citations omitted). A strict standard of review is particularly appropriate here because an objection would have permitted the trial court to correct any impression that might have been inadvertently conveyed to the jury by his prior tone of voice.

---

11. *See Haire v. Cook,* 237 Ga. 639, 229 S.E.2d 436 (1976) (construing Georgia law); *Commonwealth v. Keigney,* 3 Mass.App. 347, 329 N.E.2d 778, 781 (1975) (concurring opinion) (construing Massachusetts law). The colloquy which took place between William Westphal, Chief Counsel of the Senate Subcommittee and Professor E. Wayne Thode, Reporter for the Code of Judicial Conduct, at the Senate hearings considering the proposed statute assumes that waiver would be sufficient if the judge were to reveal the ground for disqualification on the record. *See* Senate Hearings at 111–12.

We have examined the record and cannot conclude that the trial judge's tone or conduct deprived defendant of a fair trial. We will therefore affirm the judgment of conviction.

ROSENN, Circuit Judge, concurring.

I concur in the result reached by the majority and join in that portion of part I of their opinion that discusses disqualification under 28 U.S.C. § 455(b) and I join in part II of the opinion dealing with the due process issue.

I write separately, however, because it is not clear on the record in this case that the defendant elected to waive the general disqualification provision contained in section 455(a) of the statute. It appears that shortly before the defendant's trial was to begin, the district court called counsel into his chambers and advised them that he was a "substantial holder of INA stock." The court expressed the belief that this provided "no basis for recusal," and counsel for defendant Nobel replied that from his own research he had reached the same conclusion. The majority concedes that in this discussion the parties and the district court were focusing their attention on section 455(b)(4) and did not address the disqualification requirements of section 455(a). At 236. Indeed, even the Government acknowledged this point in its brief:

> [T]he government will not argue to this Court that Nobel waived his right to seek disqualification under Section 455(a). The government believes that there is some force to Nobel's argument (Brief at 13–14) that the colloquy did not specifically address disqualification under Section 455(a) . . . . Accordingly, the government does not argue here that Nobel waived the protection of Section 455(a).

Because there is no dispute between the parties to this case as to whether Nobel waived his rights under section 455(a), I believe it is extremely ill-advised for this court to use the instant case as a vehicle to enter into an examination of the waiver question and ultimately to dispose of the case on a ground that the United States has seen fit to concede.

It is important to remember that the entire thrust of the disqualification statute is to impose on the judge an independent duty to consider whether his participation in the case will raise questions concerning his impartiality. Even if neither party raises the disqualification question, the judge must do so *sua sponte. Roberts v. Bailar,* 625 F.2d 125, 128 (6th Cir.1980); *United States v. Schreiber,* 599 F.2d 534, 539 (3d Cir.) (Seitz, C.J., concurring), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). Because the provisions of section 455 are mandatory and are addressed to the trial judge, I am reluctant to conclude, as the majority does, that the mere act of proceeding to trial after disclosure of facts establishing a basis for disqualification constitutes a waiver of section 455(a). *See SCA Services, Inc. v. Morgan,* 557 F.2d 110, 117 (7th Cir.1977). I see no need on this record to decide this difficult waiver question.

Nevertheless, I concur in the judgment reached by the majority because I do not believe that the district court's failure to recuse himself constituted legal error under section 455(a). Although there may be circumstances in which a trial judge's financial interest in a victim of a crime may compel his disqualification in a criminal trial, I do not believe that the record in this case establishes that the failure to disqualify under section 455(a) warrants a new trial. First, as the judge had no financial interest in the parties or in the subject matter which would have disqualified him under section 455(b), the only arguable basis for disqualification under section 455(a) would have been that his financial interest in the victim appeared to involve him emotionally in the case. But this is highly implausible under the circumstances here because the defendant had previously entered into a restitution settlement with the victim which would have made it whole. Second, because defense counsel assented to the court's participation at trial when counsel and the trial judge discussed the ques-

tion of disqualification under section 455(b)(4), it would appear that defense counsel himself had no reason to believe that the judge would be unable to preside over the proceedings in an impartial manner. Third, the defendant's failure to object at trial on section 455(a) grounds subjects him to a particularly heavy burden on appeal to show that the court's impartiality might reasonably be questioned. *See United States v. Schreiber, supra,* 599 F.2d 534. Although in retrospect the district court could have avoided this challenge to his participation by recusing himself, I do not think his failure to do so under the circumstances in this case rises to the level of "plain error" that the defendant must establish to obtain a new trial.

I therefore concur in the result reached by the majority and would affirm the judgment of the district court.