**UNITED STATES of America, Appellee,**

v.

**Warren ROBINSON, Clarence Jackson, a/k/a "Bubba," and Bernard Wright, a/k/a "Block," Defendants–Appellants.**

**Nos. 922, 932 and 933, Dockets 79–1361, 79–1378 and 79–1379.**

United States Court of Appeals, Second Circuit.

Argued March 31, 1980.

Decided Nov. 20, 1980.

As Amended Nov. 21, 1980.

Victor J. Herwitz, New York City (Donald E. Nawi, New York City, of counsel), for defendant–appellant Robinson.

Joel A. Brenner, East Northport, N.Y., for defendant–appellant Jackson.

Domenick J. Porco, New York City, for defendant–appellant Wright.

Richard F. Lawler, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty. for the Southern District of New York, Mary Jo White, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MANSFIELD, VAN GRAAFEILAND, and NEWMAN, Circuit Judges.*

MANSFIELD, Circuit Judge:

Warren Robinson, Clarence Jackson and Bernard Wright appeal from judgments of the District Court for the Southern District of New York convicting them after a jury trial of conspiracy to violate federal narcotics laws, 21 U.S.C. § 846, of engaging in a

---

* This appeal was argued before Judges Mansfield and Newman on March 31, 1980. Thereafter Chief Judge Kaufman designated Judge Van Graafeiland to sit with Judges Mansfield and Newman and to decide the appeal, pursuant to Rules of the United States Court of Appeals for the Second Circuit, § 0.14(b). Judge Van Graafeiland, after studying the record and briefs, conferred with the other two members of the panel.

continuing criminal narcotics enterprise, 21 U.S.C. § 848, and of distribution of heroin, 21 U.S.C. 841, and, in addition, convicting appellant Robinson of obstruction of justice, 18 U.S.C. 1503.[1] Appellants contend that they were deprived of a fair trial by intrusive misconduct of the trial judge, that the judge improperly implied to the jury his belief in the veracity of Government witnesses and in appellant Wright's guilt, that the court erroneously admitted prejudicial evidence, and that the sentence imposed upon appellant Robinson was excessive. We affirm.

The proof of the defendants' guilt, construed in the Government's favor, was overwhelming. Beginning in 1975 Robinson, who was then in prison on other federal narcotics charges, formed a small group through which substantial quantities of pure heroin were smuggled into the United States from Amsterdam, Holland, and distributed in New York City and Washington, D.C. Appellants Jackson and Wright supplied most of the funds used to buy the heroin in Holland and successively served as the principal distributors after it was smuggled into the United States. Helena Garces, a close friend of Robinson, served as the main link with the Amsterdam suppliers, visiting them in Amsterdam at Robinson's directions, purchasing the heroin from them and smuggling it on her person into the United States where she turned it over to Wright. In furtherance of the conspiracy Garces also made one trip in May 1976 to Amsterdam with a friend, Aileen Martin, whom she induced to act as a drug courier, obtaining heroin which was smuggled into the United States and delivered to Wright, and a trip in June 1976 with a courier–friend, Myrna Rivera, with whom another heroin smuggling operation was completed.

In August 1976 Garces was arrested in Amsterdam while on a heroin purchasing expedition. She signed a statement admitting illegal drug purchasing but containing untruths. After her return to the United States, she and Jackson, who was brought into the conspiracy by Robinson to succeed Wright, purchased and smuggled more heroin from Amsterdam into the United States with the assistance of Ramona Manners, Jackson's friend, who acted as courier. In the United States the heroin, with the help of subordinate co–conspirators, was packaged and distributed. There followed more successful smuggling trips in which others participated.

In the meantime the Government embarked upon investigation and prosecution of the participants in the conspiracy. Efforts were made by appellants to obstruct the investigation by threatening the life of Garces, who had agreed to cooperate with the Drug Enforcement Administration (DEA). In August 1978, after she had been convicted in the Eastern District of New York of narcotics charges based on her August 1976 trip to Amsterdam, Robinson advised her that if she discontinued her cooperation he would provide money to support her children and for a lawyer. He also unsuccessfully sought to induce her to sign a letter exonerating himself, Jackson, Wright and others. For a while she did stop cooperating with the Government but later resumed. Jackson attempted to induce one of her cosmugglers, Ramona Manners, to state falsely that she had gone to Europe on jewelry business, not to smuggle drugs.

The principal witness for the Government was Helena Garces, who was by the time of trial serving a five–year sentence imposed

---

1. Robinson was sentenced as a second offender to 35 years imprisonment on Count Two (engaging in a continuing criminal narcotics enterprise), 15 years imprisonment on Counts Three, Four and Five (unlawfully distributing heroin), and 5 years imprisonment on Count Six (obstruction of justice), all to be served concurrently. No sentence was imposed on Count One.

Jackson was sentenced to 15 years imprisonment on Count One, 5 years imprisonment on Count Three, to run consecutively to the sentence on Count One, and 10 years imprisonment on Counts Four and Five, to run concurrently with the other sentences.

Wright was sentenced on Count One to 8 years imprisonment.

A special parole term of 10 years was imposed on all three defendants.

following her narcotics conviction in the Eastern District of New York after a jury trial in which she committed perjury. She had not yet been sentenced upon her plea of guilty in the Southern District of New York to related federal narcotics charges. She described in detail the entire operations of the conspiracy in the present case.

The testimony of Garces was corroborated by that of Ramona Manners regarding her trip to Amsterdam with Garces and Jackson in November 1976, the latter two travelling under false passports, to obtain heroin which Manners smuggled into the United States under her girdle and turned over to Jackson. In addition the Government introduced the testimony of other participants in appellants' unlawful activities, including Adrian Hicks, Garces' sister, and Isaiah Crutch. The trips to Amsterdam were corroborated by hotel records, passport applications and U.S. Customs declarations forms. Letters between Robinson and Garces established that they were in communications with each other during the conspiracy. Visiting records at the United States penitentiary at Lewisburg showed that Robinson was visited there by Garces and Hicks. Other records and testimony established that Wright had substantial sums of money.

Robinson took the stand in his own defense, admitting that he knew Garces but denying that he had anything to do with her bringing heroin into the United States from Amsterdam. On rebuttal the Government introduced testimony of a U.S. Marshal, who had the three appellants in custody, to the effect that during a trial recess, after Garces had described on the witness stand some of her trips to Amsterdam to obtain heroin for Robinson, the latter had stated, among other things, in response to a comment by Jackson that Garces was lying about a particular trip, "Believe it or not she is telling the truth.... The case is air–tight, the government, she has planes, dates, trips and plane tickets and she has the receipts and all that stuff, which indicates we are part of this conspiracy." The jury found each appellant guilty of all charges against him.

## DISCUSSION

■ The principal claim made by appellants is that they were deprived of a fair trial and of effective assistance of counsel by statements and actions of the trial judge during the course of the two–week trial. In considering this claim we are guided by the principle that while the district judge "is more than a moderator or umpire and has an active responsibility to see that a criminal trial is fairly conducted," *United States v. Curcio*, 279 F.2d 681, 682 (2d Cir.), *cert. denied*, 364 U.S. 824, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960), his "participation during trial–whether it takes the form of interrogating witnesses, addressing counsel, or some other conduct–must never reach the point at which it appears clear to the jury that the court believes the accused is guilty," *United States v. Nazarro*, 472 F.2d 302, 303 (2d Cir. 1973).

■ Unquestionably the trial judge's conduct of the trial left much to be´desired. However, that is not the issue before us. The question is whether his behavior was so prejudicial that it denied any or all of the appellants a fair, as distinguished from a perfect, trial. After a careful combing of the trial testimony we conclude that, while the question is a troublesome one, appellants have not made a sufficient showing to require a new trial. In the first place, the instances of criticism of counsel, serious as some of them are, occupy but a small part of an extensive trial record, which is more than 2,300 pages long. More important, the vast majority of the remarks relied upon by appellants were made outside of the jury's presence or hearing. For the most part the rulings or statements in the jury's presence, which are relied upon by appellants, do not appear sufficiently harmful in cold print[2]

---

2. As we pointed out in *United States v. Weiss*, 491 F.2d 460, 468 n.2 (2d Cir. 1974), in the absence of a videotape and sound recording of the trial we have no way of assessing appellants' claims that the trial judge, by his gestures, tone of voice and facial expressions,

to indicate that they could reasonable be viewed as influencing the jury in favor of the Government or against any one of the defendants. Almost all of the criticisms voiced *in the jury's presence* were relatively mild. Moreover, any prejudice to appellants was at least partially mitigated by a lengthy instruction at the close of the trial in which the judge expressed gratitude to each of the defense counsel for their conscientious efforts and for "work well done" and cautioned the jury that the lawyers were not on trial, that it was their duty to offer evidence and press objections, that whether or not they or the judge liked a lawyer was irrelevant, and that it was their duty to render a verdict according to the facts as found by them and the law as instructed by the court. See *United States v. Boatner*, 478 F.2d 737, 741–42 (2d Cir.), cert. denied, 414 U.S. 848, 94 S.Ct. 136, 38 L.Ed.2d 96 (1973); *United States v. D'Anna*, 450 F.2d 1201, 1206 (2d Cir. 1971); *United States v. Curcio, supra,* 279 F.2d at 682.

Some of the judge's comments and criticisms of defense counsel in the jury's presence would better have been left unsaid. However, most of the objected–to comments in the jury's presence appear to have been relatively innocuous. The record also indicates that at least some of the trial judge's objectionable remarks were provoked by improper conduct on the part of appellant Wright's counsel.[3] According to statements made by the judge in the record, which the Assistant United States Attorney who tried the case corroborates on this appeal, Wright's counsel at times laughed or giggled at statements made by the judge or witnesses and talked so loudly and frequently that he interrupted colloquy between the court and another defense counsel, impeding other defense counsel's examination of witnesses. The record, moreover,

reveals that on occasion Wright's counsel disobeyed the judge's rulings with respect to the scope of cross–examination, made improper remarks in the presence of the jury, or posed questions that were obviously objectionable. For instance, in his cross-examination of Garces, he sought to bring out conversations which he had had with the prosecutor, and he questioned her regarding charges that had been brought against her by the Metropolitan Correctional Center while she was incarcerated there even though he knew that only one of the charges had been sustained. In another line of questioning, which eventually was stricken with his consent, he implied, for no apparent reason, that Garces' testimony incriminating some defendants was truthful, leading to the brink of a possible mistrial when other defense counsel understandably objected.

■■■ Such misconduct by defense counsel may properly be taken into account by us in determining whether a defendant was prejudiced by the judge's response. *United States v. Boatner, supra,* 478 F.2d at 740; *United States v. Ross,* 321 F.2d 61, 66 n.3 (2d Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963). As we stated in *United States v. Weiss, supra,* 491 F.2d at 468, "judges are . . . only human . . . [and] [t]hey do not possess limitless ability, once passion is aroused, to resist provocation." In assessing the nature and extent of any prejudice to the defendants from the trial judge's conduct toward their counsel, we may also consider whether the judge exhibited partisanship by favoring Government trial counsel or holding them to lesser standards than those exacted of counsel for the defendants. We fail to find any such favoritism in this record, which contains instances where the judge sustained defense objections to Government questions, took Government counsel to task for improper

---

sought to intimidate counsel, or indicated hostility, belief or disbelief in witnesses or partiality. We suffer the same handicap in determining whether the Government's claims that appellants' counsel provoked the court by laughing, talking in an excessively loud voice, or facially expressing contempt or hostility. We

are limited to the "cold record." *United States v. Grunberger,* 431 F.2d 1062, 1067 (2d Cir. 1970).

**3.** Counsel for Wright on this appeal was not his trial counsel and is not the subject of our criticism.

offers of proof, and overruled objections to questions put by defense counsel.

■ We recognize that a trial judge's improper remarks to counsel outside of the jury's presence may unnerve an attorney and make it difficult for him to serve his client to the full extent of his ability. Trial judges, like all government officials, must exercise power with restraint, and "display patience with counsel so as not to prejudice a party or create an impression of partisanship before the jury." *United States v. Pellegrino*, 470 F.2d 1205, 1207 (2d Cir. 1972), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973). However, the record reveals that all defense counsel, regardless of the judge's criticisms, vigorously and zealously represented their clients. They thoroughly and extensively cross-examined each of the principal witnesses called by the Government. They pursued numerous lines of inquiry designed to impeach these witnesses' credibility and recollections. The Government was required to toe the mark at every turn in the introduction of its proof. Defense counsel were afforded wide leeway in pursuing their defenses through cross-examination, introduction of evidence and long arguments to the jury in summation and they took advantage of this leeway. They fail to point to any ruling with respect to evidence or conduct of defense counsel which prejudiced a defendant or precluded his counsel from introducing or eliciting matter or arguments that would have been helpful to the defense. We are satisfied that the defendants were not denied effective assistance of counsel or a fair trial because of the judge's conduct toward their attorneys.

■ Nor does the record support appellants' claim that the trial judge, by his personal examination of witnesses or statements made in the jury's presence, indicates his personal belief in the veracity of certain witnesses called by the Government, his disbelief of Robinson, or his belief that the defendants were guilty. Although he frequently interrupted witnesses or counsel and sometimes asked questions, his obvious purpose in most instances was to clarify ambiguities or questions raised by the witness' testimony or the counsel's interrogation, which is permissible. *United States v. Lamont*, 565 F.2d 212, 220 (2d Cir. 1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978); *United States v. Bernstein*, 533 F.2d 775, 796 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). After defense counsel had extensively elicited upon cross–examination of certain witnesses that they had admittedly lied on prior occasions, the judge sought to avoid repetition by stating or bringing out through his own summary questions that the witnesses had frankly conceded their prior perjury but were asserting that they were now testifying truthfully pursuant to agreements to cooperate with the Government. We are unpersuaded that this procedure implied to the jury that the judge believed these witnesses. Moreover, his instructions make clear that the jury alone was to determine the credibility of the witnesses. We are satisfied that any prejudice to appellants from the trial judge's statements, comments, and questioning of witnesses, was minimal and rendered harmless by the overwhelming proof of the defendants' guilt. *United States v. Boatner, supra*, 478 F.2d at 742.

■ We find no merit in appellants' other claims of error. Since one of the objects of the conspiracy was to obstruct the Government's investigation into their ongoing heroin–smuggling operation, evidence of their activities in furtherance of this objective was properly admitted, including Robinson's unsuccessful effort to induce Garces to sign a letter falsely exonerating some of the defendants, arrangements for concealment of Garces in Washington, threats to Garces' life, and instructions to Manners to destroy her passport and falsely state that she had gone to Europe on legitimate business. *United States v. Floyd*, 555 F.2d 45, 48 (2d Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977); *United States v. Franzese*, 392 F.2d 954, 964 (2d Cir. 1968). This evidence was also admissible as evidence of appellants' consciousness of guilt.

The evidence of Wright's purchase in May, 1976, of a new Cadillac for $7,800 in cash at a time when he was not engaged in any legitimate occupation was relevant as tending to prove that he may have derived this unexplained substantial amount of money from the heroin smuggling and distribution to which Garces testified. *United States v. Viserto*, 596 F.2d 531, 536 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979); *United States v. Pensinger*, 549 F.2d 1150, 1152 (8th Cir. 1977). Proof of Robinson's participation in other similar narcotics operations, close in time and involving use of identical methods (female couriers who smuggled heroin on their bodies into the United States from Amsterdam), to which he pleaded guilty in Washington, DC, was properly admitted under Fed.Rules of Evidence 404(b) as evidence of a common plan after a finding by the trial judge that the probative value of the evidence outweighed its prejudicial effect. *United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978). Likewise, Robinson's admissions in the presence of deputy marshals in the bathroom of the courthouse during trial were not excludable under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), since they were volunteered, not obtained surreptitiously and, indeed, not even sought by the Government.

Lastly, there is no evidence that Robinson's lengthy prison sentence, which was within the statutory maximum, was unlawfully imposed. The sentence was not grossly disproportionate to the gravity of the offense committed. See *Bellavia v. Fogg*, 613 F.2d 369 (2d Cir. 1979). As the judge pointed out upon sentencing, Robinson's extensive criminal activities were heinous in the extreme. No basis appears for holding that the judge should have disqualified himself or that the circumstances of Robinson's crimes did not warrant a longer sentence in his case than those imposed on his codefendants.

The convictions are affirmed.