996 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daryl CARPENTER, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Rodney White, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Robert Garfield McKeithan, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Leith Hayes, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Emmanuel Williams, a/k/a Big E, Defendant-Appellant.
 Nos. 92-5100, 92-5101, 92-5109, 92-5232 and 92-5401.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1993.
Decided: June 30, 1993.
 
 1
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge.
 
 
 2
 Robert James Wagner, Craig Stover Cooley, David Preston Baugh, for Appellants.
 
 
 3
 John Douglass, UNITED STATES ATTORNEY'S OFFICE, for Appellee.
 
 
 4
 Steven Benjamin, for Appellant Hayes; John McGarvey, for Appellant McKeithan; Arnold Henderson, for Appellant White.
 
 
 5
 Richard Cullen, United States Attorney, Howard C. Vick, Jr., Assistant United States Attorney, James J. Reynolds, Third Year Intern, for Appellee.
 
 
 6
 Before WILLIAMS, Circuit Judge, SPROUSE, Senior Circuit Judge, and VOORHEES, Chief United States District Judge for the Western District of North Carolina, sitting by designation.
 
 VOORHEES, Chief District Judge:
 OPINION
 
 7
 The five appellants were among thirteen defendants charged with engaging in a conspiracy to distribute over five kilograms of cocaine, more than fifty grams of cocaine base, and over one kilogram of heroin. Appellant Daryl Carpenter was also charged with multiple counts of distribution of controlled substances, one count of engaging in a violent crime (murder) in aid of racketeering, one count of carrying a firearm during and in relation to a drug trafficking offense, and engaging in a continuing criminal enterprise. In addition to the conspiracy, Appellant Robert "Nupe" McKeithan was charged with two counts of distribution of a controlled substance; Appellant Rodney White was charged with three counts of distribution of a controlled substance and one count of carrying a firearm during and in relation to a drug trafficking offense; and Appellant Leith Hayes was charged with one count of distribution of a controlled substance. Appellant Emmanuel Williams was charged only with the conspiracy.
 
 
 8
 There were three separate trials on these charges. Carpenter, McKeithan, and White were tried with several other defendants who are not parties to this appeal. Carpenter waived his right to jury trial and was tried before the district court in joinder with the other defendants in the case who were being tried by the jury. The court convicted Carpenter of the conspiracy, four counts of distribution of cocaine, one count of distribution of cocaine base, and two counts of distribution of heroin, and acquitted him of all other charges. The jury convicted McKeithan of the conspiracy and both counts of distribution, one for cocaine and one for heroin. The jury also convicted White of the conspiracy, possession with intent to distribute cocaine, possession with intent to distribute cocaine base, and the firearm offense.
 
 
 9
 In a separate trial, a jury convicted Hayes of the conspiracy and one count of distribution of cocaine; the United States dismissed one count of distribution of cocaine. In a third trial, a jury convicted Williams of the conspiracy.
 
 
 10
 Appellants have appealed pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and raise ten issues on appeal. Appellant Carpenter argues that the trial court erred in denying him a reduction of two guideline levels for acceptance of responsibility. Appellants McKeithan, White, and Hayes contend that the evidence was insufficient to prove that they engaged in a conspiracy. Appellant White avers that the trial court erred in (1) refusing to sever his jury trial from the simultaneous bench trial of Daryl Carpenter; (2) refusing to hear his motion to suppress evidence; (3) allowing a police officer to comment on his failure to testify; (4) allowing into evidence transcripts of tape recorded conversations which contained comments handwritten by government witnesses; and (5) demonstrating a lack of neutrality by conveying to the jury its sentiments regarding guilt or innocence of the accused. Appellant Williams asserts that the trial court erred by (1) admitting evidence of a search of a home where drugs were found since Williams was present in the house but not found in possession of any illegal substance; (2) instructing the jury that evidence of a conspiracy to possess drugs was sufficient to convict Williams of conspiracy to possess with intent to distribute; and (3) finding Williams accountable for the entire quantity of drugs distributed by the conspiracy.
 
 
 11
 Finding no merit in any of these contentions, we affirm the convictions.
 
 I.
 
 12
 Appellant Carpenter argues that the court erred in sentencing him when it denied him a reduction of two guideline"points," or levels, for acceptance of responsibility. The presentence report prepared for Appellant Carpenter recommended that he be denied such a reduction pursuant to U.S.S.G. § 3E1.1. As grounds for that recommendation, the probation officer who prepared the report concluded that "this defendant did put the Government to its burden of proof at trial by denying the essential factual elements of guilt and while he did admit to the Probation Officer that he sold drugs, he still has failed to admit the extent of his involvement."
 
 
 13
 Appellant first argues that the guideline itself is unconstitutional since it penalizes a defendant who exercises his constitutional right to a trial. That facial challenge to § 3E1.1 must fail. Every circuit court which has considered such a challenge has concluded that the guideline per se does not impermissibly chill a defendant's right to proceed to trial. United States v. Paz Uribe, 891 F.2d 396, 400 (1st Cir. 1989), cert. denied, 495 U.S. 951 (1990); United States v. Parker, 903 F.2d 91, 106 (2d Cir.), cert. denied, 498 U.S. 872 (1990); United States v. White, 869 F.2d 822, 826 (5th Cir.), cert. denied, 490 U.S. 1112 (1989); United States v. Gonzalez, 897 F.2d 1018, 1019-21 (9th Cir. 1990); United States v. Trujillo, 906 F.2d 1456, 1461 (10th Cir.), cert. denied, 498 U.S. 962 (1990); United States v. Henry, 883 F.2d 1010, 1011-2 (11th Cir. 1989). Cf. United States v. Frazier, 971 F.2d 1076, 1087 (4th Cir. 1992) (conditioning of two point reduction on accepting responsibility for all criminal conduct does not violate fifth amendment right against self-incrimination).
 
 
 14
 As for Appellant's argument that, if the guideline is constitutional, Appellant is entitled to the reduction, the commentary to U.S.S.G. § 3E1.1(a) expressly provides that "[c]onviction by trial ... does not automatically preclude a defendant from consideration for such a reduction." However, the next sentence of the commentary indicates that such a situation would be "rare." The district judge found that Appellant was not entitled to the reduction, and that finding will not be disturbed unless clearly erroneous. 18 U.S.C.s 3742(e); United States v. White, 875 F.2d 427, 432 (4th Cir. 1989).
 
 
 15
 In this case, the probation officer asserted that Appellant had not accepted responsibility to the full extent of his involvement with the conspiracy. Appellant argued at sentencing that he was concerned with preserving his right not to incriminate himself by remaining silent as to the full extent of his involvement. However, those concerns disappeared at the trial when Appellant was ultimately acquitted of several charges and convicted of the charges for which he still refused to accept responsibility at the time the presentence report was prepared.* Given the conclusion of the probation officer and Appellant's opportunity (and failure) to produce evidence of his acceptance of responsibility at the sentencing hearing, the finding of the district court is not clearly erroneous.
 
 II.
 
 16
 Appellants McKeithan, White, and Hayes argue that the evidence at their trials was insufficient to establish a conspiracy to possess controlled substances with intent to distribute them. Keith Carpenter, Daryl Carpenter's cousin, testified in all three trials relevant to this appeal. In the trial of McKeithan and White, he testified that White was selling large quantities of drugs "for" Daryl Carpenter. He also testified that White and Daryl Carpenter each had a source of cocaine in New York, and that "they" [White and Daryl Carpenter] would buy drugs from either of these sources upon contact by White or Daryl Carpenter. As to McKeithan, Keith Carpenter testified that McKeithan would sometimes answer beeper calls intended for Daryl Carpenter, and that McKeithan gave Daryl Carpenter money in the hundreds of thousands of dollars from the sale of narcotics.
 
 
 17
 Aurelius Hopkins testified that McKeithan was involved with Daryl Carpenter in the sale of cocaine. Calvin Parker identified McKeithan and White as selling drugs for Daryl Carpenter, and described a specific instance where Parker arranged to buy drugs from Daryl Carpenter, and White arrived with Daryl Carpenter and was the one who brought the drugs and took the money. Peter Cessna also testified that he bought drugs from McKeithan, and that McKeithan, in Cessna's presence, alluded to Daryl Carpenter's involvement in the deal. Detective Sam Richardson also testified that White and Daryl Carpenter were traveling together in White's vehicle at the time of their arrest, and that two handguns were recovered from the vehicle.
 
 
 18
 In the separate trial of Hayes, Keith Carpenter testified that Hayes sold cocaine for Daryl Carpenter, and that Hayes was sometimes given the cocaine to sell independently without payment to Daryl Carpenter. He also testified that Hayes went to New York with Daryl Carpenter to buy cocaine, and that Hayes allowed Daryl Carpenter to use his car to store the cocaine. Peter Cessna testified that Hayes returned a call that Cessna had placed to Daryl Carpenter's beeper number, and that Hayes had come with McKeithan on one of Cessna's drug buys. Calvin Parker testified that he had been directed by Daryl Carpenter to get drugs from Hayes, and that Hayes sold crack cocaine for Daryl Carpenter.
 
 
 19
 With respect to their challenge to the sufficiency of the evidence against them, Appellants' convictions must be affirmed if, viewing the entire record in the light most favorable to the government, any rational trier of fact could reasonably have found that all elements of the charge of conspiracy had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 20
 [C]ircumstantial evidence that proves nothing more than association between two persons, even if one has a fixed intent known to the other to commit an unlawful act, is not sufficient to permit the inference of the requisite agreement between the two to act in concert to commit the act. Because conspiracy requires agreement between at least two persons to take a concerted action, if the purposes of the alleged coconspirators are different, though both are aimed at unlawful goals, there is no conspiracy.
 
 
 21
 United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991) (citations omitted). In other words, the mere fact that two persons associate with one another and deal in drugs, each knowing about the other's activity, is not of itself sufficient to establish a conspiracy. On the other hand, "the existence of a conspiratorial agreement ... may be inferred from the facts and circumstances of the case [where they] indicat[e] that two or more people acted in concert to achieve an illegal goal." United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992) (quoting United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980)) (citations omitted; emphasis added). Furthermore, it is not necessary to prove that all co-conspirators acted together at all relevant times, or even that all co-conspirators knew each other; it is sufficient to prove that all co-conspirators had the same overall goal. United States v. Holt, 969 F.2d 685, 687 (8th Cir. 1992).
 
 
 22
 In this case, there is ample evidence to link Appellants McKeithan, White, and Hayes to the conspiracy headed by Daryl Carpenter. As to Appellants McKeithan and Hayes, there is much evidence that they knew that Daryl Carpenter had other dealers working for him and knew who those dealers were. In addition, there is ample evidence to suggest that they knew that the profits from their own sales were being used to further the conspiracy. As for Appellant White, his argument is strongest that he was merely an "independent contractor" who bought drugs from Daryl Carpenter and sold them on his own. However, looking at the evidence in the light most favorable to the government, one can infer, given the quantities of drugs and amount of money involved, and the fact that White conspired with Daryl Carpenter to sell drugs, that White knew that there was a larger conspiracy of which he was part, and that the profits from the sales of drugs which he and Daryl Carpenter procured were used to further the goals of that conspiracy. That knowledge, combined with the ample circumstantial evidence that White and Carpenter had a common goal to increase profitable commerce for themselves and their co-conspirators through the sale of drugs, is, of course, enough to convict White of participation in that conspiracy. Bell, 954 F.2d at 236-7.
 
 III.
 
 23
 White argues that the trial court erred in (A) refusing to sever his jury trial from the simultaneous bench trial of Daryl Carpenter; (B) refusing to hear his motion to suppress evidence; (C) allowing a police officer to comment on his failure to testify; (D) allowing into evidence transcripts of tape-recorded conversations which contained comments hand-written by government witnesses; and (E) demonstrating a lack of neutrality by conveying to the jury its sentiments regarding guilt or innocence of the accused.
 
 
 24
 A. After Daryl Carpenter waived his right to trial by jury, White moved to sever his trial from that of Daryl Carpenter. Appellant White argued then, and argues now, that the aggressive behavior of Daryl Carpenter's counsel, freed from the concern of offending the jury, so tainted the jury's perception of White as to deny him a fair trial. White did, at one point during the trial, renew this motion on the grounds that his co-defendant's counsel was offending the jury, but has offered no specific reasons for that conclusion.
 
 
 25
 If a defendant is deprived of a fair trial by a conflict between his defense and that of a co-defendant, he or she, is, of course, entitled to severance. United States v. Clark, 928 F.2d 639, 644 (4th Cir. 1991). In this case, however, White has made no showing, beyond his own speculation, that Daryl Carpenter's defense, or in this case his defense attorney's behavior, had any effect on the fairness of White's trial. This court will not assume, absent any concrete evidence in support of the contention, that the jury, properly instructed as it was here, found the facts of White's case against him because its members were offended by the tactics and strategy of a co-defendant's counsel.
 
 
 26
 B. Two days before trial, White filed a motion to suppress evidence seized in a search of his vehicle at the time of his arrest. The trial judge refused to hear the motion on the grounds that it was untimely filed. Appellant argues that the motion was timely because he found out just three days before trial that the government had classified the search as an inventory search. The government contends that the DEA's own characterization of the search does not relieve defense counsel of the duty to investigate the details of the search before receiving the government's documentation characterizing the search as an "inventory search."
 
 
 27
 The district court's Local Rule 27 provides that all motions to suppress evidence known by the party must be filed within eleven days of arraignment. Failure to do so will waive the right to raise the matter at trial unless the party shows good cause why the motion was not timely filed. "Motions filed out of time are accepted at the discretion of the trial court, and this court will not entertain challenges to the proper use of this discretion." United States v. Johnson, 953 F.2d 110, 116 (4th Cir. 1991). See also United States v. Chavez, 902 F.2d 259, 262-3 (4th Cir. 1990); United States v. Badwan, 624 F.2d 1228, 1232 (4th Cir. 1980), cert. denied, 449 U.S. 1124 (1981).
 
 
 28
 While the better policy for the district court would have been to err on the side of caution by hearing the motion, especially considering defense counsel's assertion that he filed the motion just one day after receiving information that allowed him to determine that the motion may have merit, we cannot say that the trial judge abused his discretion by refusing to hear it. Because the trial judge was familiar with the discovery in this trial, in addition to the general discovery practices in that district, we cannot say it was an abuse of discretion for the district court to find that defendant did not show good cause why the motion was not timely filed.
 
 
 29
 C. In response to a question about White's statements to police upon his arrest, Detective J. J. Riani, the arresting officer, testified that "[h]e stated he didn't wish to answer any more questions at that time and he was not asked any by myself." After an intervening question and answer, the trial judge instructed the jury that Appellant White had an absolute right to be silent and that they may not hold his silence against him. The judge added an admonishment to the witness that he should not have mentioned Appellant's desire not to answer any more questions.
 
 
 30
 The government may not call attention to an accused's silence at the time of arrest. Doyle v. Ohio, 426 U.S. 610, 619 (1976). However, such an error is harmless where the testimony is isolated, the prosecutor does not refer to it in closing argument, and the trial court gives a curative instruction that the jury is not to hold the defendant's silence against him in any way. United States v. Massuet, 851 F.2d 111, 114 (4th Cir. 1988). See also Williams v. Zahradnick, 632 F.2d 353, 361-2 (4th Cir. 1980). Here, all of the above protections were present, and the trial judge made certain that the error would be harmless. Therefore, we find no abuse of discretion in the district court's handling of the comment of Detective Riani.
 
 
 31
 D. During the playing of several audio and video tapes that the government offered as evidence, the jury was given transcripts of the tapes to help them understand the tapes. The transcripts contained handwritten notations which highlighted those portions of the tape about which the government was going to ask the witness. After looking at the notations on the transcripts, the trial judge, finding no prejudice, overruled the objection and gave a cautionary instruction.
 
 
 32
 "Whether to allow the use of transcripts to aid in the presentation of tape recorded evidence is within the district court's sound discretion." United States v. Collazo, 732 F.2d 1200, 1203 (4th Cir. 1984), cert. denied sub nom. Alvarez v. United States, 469 U.S. 1105 (1985) (citation omitted). A cautionary instruction will generally be sufficient to cure any prejudice that the transcripts would otherwise cause. Id. Since the judge inspected the challenged transcripts and concluded that the notations were not prejudicial, and, in addition, gave a cautionary instruction that the tapes-not the transcripts-were evidence, we cannot find that the trial judge abused his discretion to allow use of the transcripts as an aid to understanding without admitting them.
 
 
 33
 E. During cross-examination of a government witness by counsel for Lewis, one of White's co-defendants who was ultimately acquitted, the district court sustained a government objection on relevancy grounds. When Lewis's defense attorney sought to explain his rationale for that line of questioning, the judge responded, in the presence of the jury, "[y]ou can object all the hell you want. Just get to the point. You are wasting time." Lewis's counsel moved for a mistrial, which was denied without further comment.
 
 
 34
 We realize, taken in isolation, that such a comment on defense counsel's objection, with the jury present, was outside the bounds of proper judicial expression during trial of a criminal case. However, the Second Circuit has recognized the burden of reviewing such comments on appeal.
 
 
 35
 Judges, being human, are not immune to feelings of frustration at the occasional antics or inartfulness of attorneys or impatience at the evasiveness of witnesses. Such feelings may give vent to remarks which, judged in isolation from the totality of the record through the dispassionate looking glass of hindsight, "would better have been left unsaid." Yet, analysis of such comments, taken out of context of the entire record, is not the proper basis for review. Rather, we must make "an examination of the entire record," in order to determine whether the defendant received a fair trial.
 
 
 36
 United States v. Bejasa, 904 F.2d 137, 141 (2d Cir.), cert. denied, 498 U.S. 921 (1990) (quoting United States v. Robinson, 635 F.2d 981, 985 (2d Cir. 1980), cert. denied, 451 U.S. 992 (1981), and United States v. Mazzilli, 848 F.2d 384, 389 (2d Cir. 1988)). Here, White has utterly failed to show that the district court's remark prejudiced White's cause, especially in light of the fact that the jury proceeded to acquit the defendant (Lewis) toward whose attorney the comment was directed. Taking the challenged bench comment in the context of the record as a whole, we find no reversible error.
 
 IV.
 
 37
 Appellant Williams argues that the trial court erred by: (A) admitting evidence of a search of a home where drugs were found since Appellant was present in the house but not found in possession of any illegal substance; (B) instructing the jury that evidence of a conspiracy to possess drugs was sufficient to convict Appellant of conspiracy to possess with intent to distribute; and (C) finding Appellant accountable for the entire quantity of drugs distributed by the conspiracy.
 
 
 38
 A. At Williams' trial, Detective John Venuti testified that Williams and Daryl Carpenter were at a house where a search warrant was executed in February, 1990. During that search, several persons present were arrested on drug charges, and a large amount of cash was seized from Daryl Carpenter, but neither he nor Williams was arrested. On cross-examination, Detective Venuti testified that Williams was not "with" those persons who were arrested, and was not found to have any unlawful substance on his person.
 
 
 39
 In drug conspiracy cases, evidence may be relevant to show either that the accused was part of the alleged conspiracy or that the alleged conspiracy dealt in drugs. See generally United States v. Ricks, 882 F.2d 885, 892 (4th Cir. 1989), cert. denied sub nom. King v. United States, 493 U.S. 1047 (1990). Here, the evidence in question is relevant to link Williams with the conspiracy. The fact that Williams knew and associated with Daryl Carpenter, who, at the time of Williams' trial, had been convicted of being the head of a large drug conspiracy, is clearly relevant to the question of whether Williams was part of the conspiracy.
 
 
 40
 Even though the evidence is relevant and probative of a legitimate element of the government's case, it must be excluded if its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. In those terms, the danger arising from admission of the evidence is that the jury might use it as improper character evidence or, in other words, might reason that since Williams was present at the home of drug dealers, he must have been involved himself. We think that the prejudicial effect was slight. The testimony itself was clear that no drugs were found on Williams and that he was not with those persons who were arrested for dealing in drugs. There is no indication of a likelihood that the jury improperly considered this evidence against Williams. The district court weighed the likelihood that the evidence had a prejudicial effect against its probative value, and found that the former did not substantially outweigh the latter. This was not an abuse of discretion.
 
 
 41
 B. On the morning of the second day of deliberations, the jury asked to be re-instructed on the law of conspiracy. Rather than reading from prepared instructions, the district court instructed in a conversational mode. In doing so, he instructed the panel in two references that the object of the alleged conspiracy was to possess drugs, leaving out the requirement that the drugs be possessed with intent to distribute. 21 U.S.C. § 841(a)(1). No objection was made. The jurors were also given written instructions which, it is not disputed, were thorough and correct in describing the object of the conspiracy.
 
 
 42
 We review for plain error. "Where two instructions are in conflict, and one is an incorrect statement of the law and is clearly prejudicial, the charge constitutes reversible error, since the jury 'might have followed the erroneous instruction.' " United States v. Varner, 748 F.2d 925, 927 (4th Cir. 1984) (quoting United States v. Walker, 677 F.2d 1014, 1016-7 n.3 (4th Cir. 1982)) (emphasis added). We cannot find prejudice in the challenged instructions. While the statements were incorrect, the element of proof in question had been stated correctly in the body of the primary jury instructions at the close of argument. In addition, the law was stated correctly in the written instructions given to the jury. Here the error complained of, clearly inadvertent though it no doubt was, has received our careful scrutiny, but we find it does not rise to the level of reversible error.
 
 
 43
 C. Williams argued at sentencing that he was merely a street level dealer in the conspiracy, and that he should not be held accountable for the amount of drugs found to be dealt by the conspiracy. The sentencing judge rejected that argument, finding that, as a member of the "family" who accompanied its head, Daryl Carpenter, to New York to procure drugs, Williams was responsible for that amount of drugs sold by the conspiracy while he was part of it.
 
 
 44
 A conspiracy defendant may only be sentenced based on the amount of drugs which were reasonably foreseeable to him as part of the conspiracy. United States v. Vinson, 886 F.2d 740, 742 (4th Cir. 1989), cert. denied, 493 U.S. 1062 (1990). While Williams was not a decision-maker in the conspiracy, he was, the jury found, a member of that conspiracy. The relevant question for such a member is not the amount of drugs he himself dealt, but the amount of drugs he reasonably foresaw the conspiracy as a whole to be dealing. The trial judge, who heard the evidence at trial and the arguments at sentencing, found that Williams was more than a low-level drug dealer. As an integral part of the conspiracy, a "family" member, and someone who purchased a large quantity of drugs in New York, Williams could reasonably have foreseen the volume of drugs being dealt by the conspiracy. In addition, the fact that the district court found Williams responsible for only 12 months of involvement in the conspiracy, involving 29.5 kilograms of heroin rather than for its much longer total life span, suggests that the district court applied the law correctly. Thus, the findings of the sentencing judge were not clearly erroneous.
 
 V.
 
 45
 For the foregoing reasons, Appellants' convictions are affirmed.
 
 AFFIRMED
 
 
 *
 Appellant argues that he was denied the reduction because of his failure to admit involvement in criminal conduct for which he was acquitted. That is not the case. Appellant was convicted of substantial criminal activity dealing in narcotics, for much of which the probation officer concluded he had not accepted responsibility